**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Sanjeev Lath

    v.

Oak Brook Condominium Owners'
Association, Cheryl Vallee,
Perry Vallee, William Quinn
Morey, Gerald Dufresne, Christos
Klardie, Vickie Grandmaison,
Patty Taylor, Betty Mullen,
Scott Sample, John Bisson, and
Warren Mills

Civil No. 16-cv-463-LM
Opinion No. 2017 DNH 052

## O R D E R

Pro se plaintiff Sanjeev Lath, who owns a unit in the Oak Brook Condominium, asserts several dozen federal and state claims against the Oak Brook Condominium Unit Owner's Association ("Association"); the Association's attorney (John Bisson); six current or former members of the Association's board of directors, some of whom are current or former officers (Cheryl Vallee, Perry Vallee, William Morey, Christos Klardie, Patty Taylor, Warren Mills); two current or former employees of the Association (Vickie Grandmaison and Scott Sample); and two unit owners (Gerald Dufresne and Betty Mullen). The operative complaint in this case is Lath's first amended complaint ("FAC"), which he filed as a matter of course pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure ("Federal Rules").

After Lath filed his FAC, three motions to dismiss were filed, one by the Association, Cheryl Vallee, Perry Vallee, Morey, Klardie, Grandmaison, Taylor, and Sample (hereinafter "principal motion to dismiss"); one by Bisson; and one by Mullen.  Subsequently, Mills joined the principal motion to dismiss.  Dufresne is the only defendant who has not moved to dismiss the FAC.  Plaintiff has not objected to any of the three motions to dismiss but, rather, has moved for leave to file a second amended complaint ("SAC"), pursuant to Rule 15(a)(2).  An objection to plaintiff's motion for leave to amend has been filed by the Association, Cheryl Vallee, Perry Vallee, Morey, Klardie, Grandmaison, Taylor, Sample, Mills, and Mullen (hereinafter "ten defendants"), and a second objection has been filed by Bisson.  Dufresne is the only defendant who has not objected to plaintiff's motion for leave to amend.  For the reasons described below, Lath's motion for leave to amend is granted in part, and the three pending motions to dismiss are denied as moot.

## I. The Legal Standard

Because plaintiff has already amended his complaint once, as a matter of course, any subsequent amendment is governed by the following rule:

> [A] party may amend its pleading only with the
> opposing party's written consent or the court's leave.
> The court should freely give leave when justice so
> requires.

Fed. R. Civ. P. 15(a)(2).  However, while

> courts "should freely give leave when justice so
> requires," id., amendments may be denied for several
> reasons, including "undue delay, bad faith, dilatory
> motive of the requesting party, repeated failure to
> cure deficiencies, and futility of amendment."

Hagerty, ex rel. U.S. v. Cyberonics, Inc., 844 F.3d 26, 34 (1st

Cir. 2016) (quoting U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d

720, 733-34 (1st Cir. 2007); citing Foman v. Davis, 371 U.S.

178, 182 (1962)).  "[I]n assessing futility, the district court

must apply the standard which applies to motions to dismiss

under Fed. R. Civ. P. 12(b)(6)."  Morgan v. Town of Lexington,

823 F.3d 737, 742 (1st Cir. 2016) (quoting Adorno v. Crowley

Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006)).

Under Rule 12(b)(6), the court must accept the factual

allegations in the complaint as true, construe reasonable

inferences in the plaintiff's favor, and "determine whether the

factual allegations in the plaintiff's complaint set forth a

plausible claim upon which relief may be granted."  Foley v.

Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014)

(citation omitted).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the

3

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.  Finally, in light of plaintiff's pro se status, the court must construe his pleadings liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## II. Discussion

In the first part of this section, the court explains its decision to grant plaintiff's motion to amend his FAC.  Then, in the second part, the court evaluates each of the claims asserted in the SAC to determine which of them shall remain a part of this case moving forward.

### A. Motion for Leave to Amend

The ten defendants argue that plaintiff's motion for leave to amend his FAC should be denied because: (1) it was filed in bad faith or with a dilatory motive; (2) amendment would be futile; and (3) plaintiff has failed to comply with the requirements of Local Rule 15(a).  Bisson argues that the motion should be denied because: (1) plaintiff has failed to comply with Rule 15(a); (2) plaintiff has already had one chance to cure any deficiencies in his complaint; and (3) amendment would be futile.

4

        1. LR 15(a)

     Plaintiff's FAC (237 paragraphs, 84 pages) asserts 16

claims.  In his motion for leave to amend, plaintiff says that

his "proposed amendment would clarify the specific allegations

without significantly expanding or altering the scope of this

action," Pl.'s Mot. for Leave to Amend (doc. no. 48) ¶ 7, and

that his "amendment merely provides specific details, incidents,

dates and exhibits," id. ¶ 11.  Yet, while plaintiff's FAC

asserts 16 claims, his proposed SAC (406 paragraphs, 95 pages)

asserts more than 40 claims.  Some are identical to claims

asserted in the first amended complaint,[1] but, necessarily,

others are entirely new.[2]

     Understandably concerned by the differences between the FAC

and the proposed SAC, both the ten defendants and Bisson point

out, correctly, that plaintiff has failed to comply with the

local rules of this court, which require plaintiffs moving to

amend their complaints to, among other things, "(ii) identify in

the motion or a supporting memorandum any new factual

allegations, legal claims, or parties, and (iii) explain why any

_____

     [1] Each complaint includes a claim for negligence (Count 1 in
the FAC and Cause 33 in the proposed SAC).

     [2] The proposed SAC includes a claim that is captioned
"Malicious and Damaging Prosecution," doc. no. 48-1, at 37,
while the FAC includes no such claim.

new allegations, claims, or parties were not included in the original filing."  LR 15.1(a).  Lath concedes that he has not complied with LR 15.1(a).  However, denying Lath's motion for failure to comply with LR 15.1(a) would merely invite another motion for leave to amend, and another round of objections.  In the interest of conserving the resources of the parties, the court allows Lath's motion despite a lack of compliance with LR 15.1(a).

### 2. Dilatory Motive/Opportunity to Cure

In reliance upon a chronicle of plaintiff's history of litigation in other fora, and this court's characterization of plaintiff's "numerous recent filings [in this case as] burdensome to the court and defendants," Order (doc. no. 49) 2, the ten defendants argue that plaintiff's attempt to amend his complaint is nothing more than a further use of the legal process to harass them.  Bisson makes a similar point in his argument that plaintiff has already had a sufficient opportunity to cure any deficiencies in his original complaint.  While sympathetic to defendants' concern over having to defend against a stream of claims that seems to continually shift and widen, the court is also mindful of the indulgence it must afford Lath's pleadings, given his status as a pro se litigant.  See Erickson, 551 U.S. at 94.  In the end, the court declines

6

defendant's request to deny plaintiff's motion on grounds of a dilatory motivation.  However, for the reasons explained below, the court dismisses nine claims for failure to meet the Rule 12(b)(6) standard and dismisses five state law claims for lack of jurisdiction.

### 3. Futility

Leave to amend a complaint may be denied if "the complaint, as amended, would fail to state a claim upon which relief could be granted." D'Agostino v. ev3, Inc., 845 F.3d 1, 6 (1st Cir. 2016) (quoting Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996); citing 3 Moore's Federal Practice ¶ 15.08[f], at 15-80 (2d ed. 1993)).  As the court explains in more detail in the section that follows, Causes 1, 4, 10, 14, 15, 18, 27, 29, and 30 of the SAC state claims upon which relief can be granted.  Accordingly, plaintiff's motion for leave to amend cannot be denied on grounds of futility.

### 4. Summary

The Federal Rules provide that, generally speaking, leave to amend a complaint should be freely given.  While there are exceptions to that general rule, see Hagerty, 844 F.3d at 34, none of them applies to the circumstances of this case.  Accordingly, Lath's motion for leave to amend his FAC is

granted, which makes the SAC the operative complaint in this
case.

### B. Claims Moving Forward

While Lath's SAC is now the operative complaint, the court
appreciates the difficulties of defending against a 95-page
complaint that comes nowhere close to meeting the "short and
plain statement" requirement of Rule 8(a) of the Federal Rules.
The court also appreciates the challenges in terms of efficiency
and economy that would result from directing Lath to correct the
deficiencies in the SAC.  In addition, the court recognizes that
in their three motions to dismiss the FAC, and in their two
objections to plaintiff's motion for leave to amend, defendants
have argued that some of plaintiff's claims do not pass muster
under Rule 12(b)(6), and that the court should decline to
exercise supplemental jurisdiction over some of plaintiff's
state law claims.  Moreover, plaintiff has had an opportunity to
respond to all of those arguments.

In the interest of clarifying and simplifying things for
both sides, in the interest of conserving the resources of all
parties, and in the interest of judicial economy, the court will
devote the remainder of this order to evaluating each of the
claims asserted in the SAC.  As a result of that analysis, the
court will place each of those claims into one of four

categories: (1) claims that may proceed because they satisfy Rule 12(b)(6); (2) claims that may proceed if plaintiff is able to show cause why they should not be dismissed under Rule 12(b)(6);[3] (3) claims that are dismissed because they do not satisfy Rule 12(b)(6); and (4) state law claims that are dismissed because the court lacks, or declines to exercise, supplemental jurisdiction over them.  In addition, with respect to each claim in the first category, the court will identify the specific defendant(s) against whom plaintiff may pursue that claim.

It would be conventional to evaluate the claims in plaintiff's SAC in the order in which they are presented.  The SAC, however, is somewhat disjointed.  Thus, rather than following the organizational scheme of the SAC, the court will adopt its own, beginning its analysis with Lath's federal claims and then turning to the claims that arise under state law.  Moreover, for the sake of clarity, the court will impose its own numbering scheme on plaintiff's claims, and directs the parties to use that numbering scheme as this case moves forward.

_____

[3] The claims in this category are those that the court finds suspect for reasons that have not been articulated by any defendant, and to which plaintiff has not had an opportunity to respond.

<u>1. Fair Housing Act</u>

In Causes 1 through 13 of the SAC, Lath asserts claims that arise under the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631.  Those claims invoke five different theories of FHA liability.  The court considers each theory in turn.

<u>a. Race & Sexual Orientation Discrimination</u>

Cause 4 of the SAC is a claim for housing discrimination based upon race and sexual orientation.  Cause 4, in turn, appears to be a reiteration of Count 7 of the FAC, which asserts:

> Defendant Warren Mills [who, at the time, was the president of the Association's board of directors] assaulted Lath, by forcing his way into Lath's residence, and shouting obscenities at Lath, calling him a "faggot" and "sand nigger."  Such actions of Mills were motivated because of Lath's sexual orientation as a bisexual man, and Lath's national origin and race.  Such was a violation of 42 U.S.C. § 3604 et. seq.

Doc. no. 19 ¶ 31.

The SAC gives two different dates for the incident underlying Cause 4.  <u>See</u> doc. no. 48-1 ¶ 180 (June 8, 2013) & ¶ 182 (June 8, 2014).  However, several exhibits attached to the SAC make it clear that plaintiff intends to allege that the incident took place on June 8, 2014.[4]

---

[4] While no defendant raises this issue, the court notes that civil enforcement under the FHA is subject to a two-year limitation period.  <u>See</u> 42 U.S.C. § 3613(a)(1)(A).

In the principal motion to dismiss the FAC, defendants argue that Count 7 must be dismissed because the FHA's anti-discrimination provisions do not apply to post-acquisition conduct.  However, this court has determined, in a previous case, "that 'the FHA does apply to post-acquisition discrimination.'"  United States v. Avatar Props., Inc., No. 14-cv-502-LM, 2015 WL 2130540, at *3 (D.N.H. May 7, 2015) (quoting Comm. Concerning Cmty. Improv. v. City of Modesto, 583 F.3d 690, 713 (9th Cir. 2009)) (emphasis added).  Accordingly, defendants' argument does not entitle them to dismissal of Lath's housing discrimination claim.

That said, the court describes, briefly, the nature of plaintiff's housing discrimination claim.  The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).  While the court of appeals for this circuit has not yet been called upon to do so, other courts have recognized a cause of action against those who discriminate by creating a "hostile housing environment" based upon the classifications identified in 42 U.S.C. § 3604(b).  See, e.g., West v. DJ Mortg., LLC, 164 F. Supp. 3d 1393, 1398

(N.D. Ga. 2016) (discrimination based on sex); Jackson v. Park Place Condos. Ass'n, Inc., 619 F. App'x 699, 703 (10th Cir. 2015), cert. denied, 136 S. Ct. 484 (2015), reh'g denied, 136 S. Ct. 887 (2016) (discrimination based on race).  This court will assume, favorably to Lath, that if asked to do so, the First Circuit would recognize a cause of action based upon the creation of a hostile housing environment based upon sexual orientation, race or national origin.[5]  Accordingly, plaintiff may proceed with his claim under 42 U.S.C. § 3604(b).

---

[5] Race and national origin are specifically listed in § 3604(b).  Sexual orientation is not, and courts have held that "[t]he FHA does not prohibit discrimination based on sexual orientation in the sale or rental of housing." Thomas v. Wright, No. 2:14-cv-01604-RDP, 2014 WL 6983302, at *3 (N.D. Ala. Dec. 10, 2014) (citing Ordelli v. Mark Farrell & Assocs., 2013 WL 1100811, *2 (D. Or. 2013); Miller v. 270 Empire Realty LLC, 2012 WL 1933798, *5 (E.D.N.Y. 2012); Fair Housing Ctr. of Washtenaw Cty., Inc. v. Town & Country Apts., 2009 WL 497402, *3, n.1 (E.D. Mich. 2009); Swinton v. Fazekas, 2008 WL 723914, *5 (W.D.N.Y. 2008).  However, in a recent case out of the Northern District of Alabama, Judge Acker cited guidance promulgated by the Department of Housing and Urban Development interpreting the FHA's prohibition of sex discrimination to include "gender stereotyping" discrimination on the basis of sexual orientation. Thomas v. Osegueda, No. 2:15-CV-0042-WMA, 2015 WL 3751994, at *4 (N.D. Ala. June 16, 2015).  Construing Lath's complaint liberally, see Erickson, 551 U.S. at 94, the court cannot say at this early stage that his claim of sexual orientation discrimination is not cognizable under the FHA.  See Garayalde-Rijos v. Muni. of Carolina, 747 F.3d 15, 23 (1st Cir. 2014) (explaining that sua sponte dismissal is appropriate only when it is "crystal clear" that the plaintiff cannot prevail and that amending the complaint would be futile) (internal quotation marks omitted).

As this case moves forward, Lath's § 3604(b) hostile

housing environment claim shall be referred to as Count 1.

### b. Handicap Discrimination

Cause 1 of the SAC is a claim for housing discrimination,

in the form of a failure to provide Lath with a reasonable

accommodation for his mental handicap.  Cause 1, in turn,

appears to be a reiteration of Count 8 of the FAC.  That claim

is based upon the following factual allegation:

> By constructively refusing to make reasonable
> accommodations in [the] "no dog" policy as set forth
> in Rule 9 of its Rules and Regulations for Oak Brook
> Condominium Owners' Association, and with an intent to
> retaliate and harass [L]ath for filing a complaint
> with [the New Hampshire Commission for Human Rights]
> and [the Equal Employment Opportunity Commission],
> when such accommodations were necessary to afford Lath
> equal opportunity to use and enjoy his dwelling,
> Defendants failed to reasonably accommodate Lath to
> have the company of an "emotional support" dog.

FAC (doc. no. 19) ¶ 172.

Under the FHA, failure to modify the rules applicable to a

dwelling to provide a reasonable accommodation for a handicapped

occupant constitutes unlawful discrimination.  See Astralis

Condo. Ass'n v. Sec'y, HUD, 620 F.3d 62, 67 (1st Cir. 2010)

(citing 42 U.S.C. § 3604(f)(3)(B), which defines discrimination

to include "a refusal to make reasonable accommodations in

rules, policies, practices, or services, which such

accommodations may be necessary to afford [a handicapped] person

equal opportunity to use and enjoy a dwelling").[6]  Moreover, a request for a reasonable accommodation may be constructively denied when the entity from whom the accommodation is requested unnecessarily delays its response.  See, e.g., United States v. Town of Garner, 720 F. Supp. 2d 721, 729 (E.D.N.C. 2010) ("Denial of a reasonable accommodation request may be actual or constructive, 'as an indeterminate delay has the same effect as an outright denial'") (quoting Groome Res., Ltd. v. Parish of Jefferson, 234 F.3d 192, 199 (5th Cir. 2000)); see also Sabal Palms Condos. of Pine Island Ridge Ass'n, Inc., 6 F. Supp. 3d 1272, 1290-91 (S.D. Fla. 2014) ("[i]n some circumstances, a housing provider that refuses to make a decision could be found to have constructively denied the request by 'stonewalling' and short-circuiting the process") (quoting Overlook Mut. Homes, Inc. v. Spencer, 415 F. App'x 617, 622 (6th Cir. 2011)).

---

[6] The FHA defines "handicap" to mean "(1) a physical or mental impairment which substantially limits one or more . . . major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).  Plaintiff supports his allegation that he is handicapped with an excerpt from a 2011 disability determination from the Social Security Administration, which does not identify the impairment that rendered him disabled. But, in a recent pleading, plaintiff referred to his current "forty hour [per] week job," Pl.'s Reply (doc. no. 56) ¶ 49, which suggests that he may not be substantially limited in the major life activity of working.  In any event, whether Lath has a handicap that is cognizable under the FHA is a question for another day.

Cause 1 of the SAC appears to allege conduct that would support a discrimination claim under 42 U.S.C. § 3604(f)(2)(A), and no defendant has argued to the contrary.  However, Bisson argues, correctly, that Lath has failed to state a FHA accommodation claim against him.  As the Association's attorney, Bisson was never in a position to grant Lath an exception to the "no dog" policy in the first instance, which means that he cannot be liable for any violation of § 3604(f)(2)(A).  The only defendant in a position to provide Lath with relief from the "no dog" policy was the Association itself.  Accordingly, while Lath has stated a claim under § 3604(f)(2)(A), the only defendant on that claim is the Association.

As this case moves forward, Lath's § 3604(f)(2)(A) claim against the Association claim shall be referred to as Count 2.

### c. Retaliation

Causes 2, 3, 7, and 13 of the SAC use the term "retaliation."  Causes 5 and 6 charge defendants with intimidating and threatening various persons for participating in activities protected under the FHA.  Cause 8 charges defendants with making "threats and causing bodily injury, thereby causing death, to persons participating lawfully in speech or peaceful assembly and denial of such opportunities."  SAC (doc. no. 48-1) 36.  Causes 9 and 12 charge defendants with

15

coercion, intimidation, and interference in violation of 42 U.S.C. § 3617, which is the FHA retaliation provision.  Those nine retaliation claims, in turn, appear to have their origin in Count 9 of Lath's FAC.  In the SAC, Lath alleges that because he filed a discrimination claim against Mills, Grandmaison, and the Association's board of directors with the federal Equal Employment Opportunity Commission ("EEOC") and the New Hampshire Commission for Human Rights ("HRC"),[7] he was subjected to the following acts of retaliation:

a.  Mullen "surreptitiously installed cameras, capable of capturing both images and sound, inside Plaintiff's residence, and/or its curtilage," SAC (doc. no. 48-1) ¶ 33;

b.  Mullen, Morey, Sample, and Grandmaison filed baseless claims against him with various law enforcement and other public agencies, see id. ¶ 38;

c.  Morey, Taylor, Cheryl Vallee, and Klardie mishandled his request to keep an emotional support dog; see id. ¶¶ 42-49

d.  Morey, Taylor, Cheryl Vallee, Perry Vallee, Bisson, Sample, and Grandmaison demanded a copy of the key to his residence, see id. ¶ 69;

e.  the same seven defendants refused to service the heat to his unit in 2015, see id. ¶ 72;

---

[7] The court notes that the FHA provides for administrative enforcement through the Secretary of Housing and Urban Development, not the EEOC.  See 42 U.S.C. § 3610.

    f.    the same seven defendants refused to accept packages or mail addressed to him, <u>see</u> <u>id.</u> ¶ 74;

    g.    the same seven defendants propounded fines against him for violating the Association's rules, <u>see</u> <u>id.</u> ¶ 75;

    h.    the same seven defendants failed to take prompt action to remedy the FHA violations he had suffered, <u>see</u> <u>id.</u> ¶ 76; and

    i.    Sample assaulted him on May 26, 2016, <u>see</u> <u>id.</u> ¶ 80.

In the principal motion to dismiss the FAC, defendants object to the manner in which Lath presented Count 9, but they do not argue for the dismissal of the claims asserted therein. However, there is a matter that be must addressed before Lath may proceed with his retaliation claims.

The court of appeals for this circuit has not described the contours of an FHA retaliation claim. But Judge Woodlock has:

> Section 3617 of the FHA further provides that a person cannot "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" rights protected under the FHA. 42 U.S.C. § 3617. Actions under this section require the plaintiff to make the following showing: (1) the plaintiff is a member of an FHA-protected class; (2) the plaintiff exercised a right protected by §§ 3603-06 of the FHA, or aided others in exercising such rights; (3) <u>the defendants' conduct was at least partially motivated by intentional discrimination</u>; and (4) the defendants' conduct constituted coercion, intimidation, threat, or interference on account of having exercised, aided, or encouraged others in exercising a right protected by the FHA. King v. Metcalf 56 Homes Ass'n, Inc., 385 F. Supp. 2d 1137, 1142-43 (D. Kan. 2005).

S. Middlesex Opp. Council, Inc. v. Town of Framingham, 752 F. Supp. 2d 85, 95 (D. Mass. 2010) (emphasis added).[8]  As for the third element of a § 3617 claim, Judge Woodlock further explained that "in connection with a disparate treatment claim under Section 3604 and under Section 3617, there must be sufficient evidence for a reasonable jury to conclude that the Defendants were motivated by a protected characteristic in performing the challenged conduct."  Id. at 95-96 (emphasis added, internal quotation marks omitted).

Neither the FAC nor the SAC has much to say about animus related to Lath's protected characteristics, i.e., his race and/or national origin.  To be sure, plaintiff alleges that Mills once called him a "sand nigger."  But plaintiff does not allege that Mills engaged in any of the conduct underlying his retaliation claim, and he makes no allegations of animus on the part of any of the defendants who did engage in the conduct he calls retaliatory.  Plaintiff's inadequate allegations of animus

_____

[8] While Judge Woodlock discussed the elements of a § 3617 claim, Count 9 of the FAC also cites § 3631.  But as that section provides for criminal penalties, it does not provide Lath with a private cause of action.  See, e.g., Lawton v. N.J. Dep't of Cmty. Affairs, Civ. No. 15-8526 (RBK/JS), 2016 WL 5012321, at *3 (D.N.J. Sept. 16, 2016) (citations omitted); Lewis v. Doe, No. 16-cv-01167-EMC, 2016 WL 4411818, at *3 (N.D. Cal. Aug. 19, 2016).  Accordingly, Lath's § 3631 claims are dismissed, sua sponte.  See Garayalde-Rijos, 747 F.3d at 23.

would appear to be fatal to his retaliation claims.  Moreover,
sua sponte dismissal can be appropriate "where 'it is crystal
clear that the plaintiff cannot prevail and that amending the
complaint would be futile.'"  Garayalde-Rijos, 747 F.3d at 23
(quoting Chute v. Walker, 281 F.3d 314, 319) (1st Cir. 2001);
citing Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st
Cir. 2001)).  While the court harbors concerns over the
allegations of animus in the SAC, the better course of action
with respect to plaintiff's retaliation claims under § 3617,
i.e., Causes 2, 3, 5, 6, 7, 8, 9, 12, and 13 of the SAC, is to
give him an opportunity to show cause why those claims should
not be dismissed for failing to allege that "defendants' conduct
was at least partially motivated by intentional discrimination."
S. Middlesex, 752 F. Supp. 2d at 95.  At the end of this order,
the court will explain how, precisely, plaintiff must go about
showing cause.  If he is able to do so, then he will be allowed
to continue pursuing his retaliation claims.  If he declines to
show cause, or is unable to do so, then those claims will be
dismissed.

As this case moves forward, Lath's nine § 3617 retaliation
claims shall be referred to as Counts 3(a)-(i).

<u>d. Discriminatory Preference</u>

Cause 10 of the SAC is captioned "Unlawful Representation by Printing and Publishing a Notice and Statement that Indicates a Preference for 'True Service Dogs.'"  Doc. no. 48-1, at 36. The FAC does not include a separate claim for "unlawful representation."  However, both the FAC and the SAC include this paragraph:

> Defendants engaged in a discriminatory practice by printing, or publishing, or caus[ing] to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling, or provision of its services or facilities, in connection with this dwelling, that . . . indicate preference, limitation, or discrimination, based on handicap or an intention to make any such preference, limitation, or discrimination which were published by Defendants in a periodic newsletter, that state a preference for "real service dogs" only.

Doc. no. 19 ¶ 27 (FAC); doc. no. 48-1 ¶ 27 (SAC).  In his SAC, Lath elaborates:  "Defendants have only allowed 'true service dogs' on property.  Defendants made it clear in a summer newsletter publication."  <u>Id.</u> ¶ 156.[9]  Neither the principal

---

[9] The quoted statement concludes with a citation to Exhibit 66, but Exhibit 66 is not the Association's summer newsletter; it is a set of interrogatory answers that Mills produced in a case in the New Hampshire Superior Court.  In attempt to locate the newsletter, the court examined Exhibits 56 through 76, without success.  The SAC includes numerous erroneous citations to the record.  The court admonishes Lath to peruse his future filings carefully and take care to correct these kinds of errors.  Such mistakes complicate the jobs of both the court and opposing counsel.

motion to dismiss the FAC nor the ten defendants' objection to
Lath's motion to amend the FAC makes any specific mention of the
claim asserted in Cause 10, but the ten defendants do argue,
generally, that Cause 10 does not state a claim upon which
relief can be granted.  The court does not agree.

The FHA includes a provision which makes it unlawful for a
person

> [t]o make, print, or publish, or cause to be made,
> printed, or published any notice, statement, or
> advertisement, with respect to the sale or rental of a
> dwelling that indicates any preference, limitation, or
> discrimination based on race, color, religion, sex,
> handicap, familial status, or national origin, or an
> intention to make any such preference, limitation, or
> discrimination.

42 U.S.C. § 3604(c).  The court of appeals has acknowledged that

"[t]here is not much case law under the [FHA] in this circuit."

Astralis, 620 F.3d at 66.  Indeed, in Langlois v. Abington

Housing Authority, a case that involved a claim that a local

housing authority published an advertisement that indicated

racial preferences, Judge Gertner looked outside the circuit to

find the elements of a claim under § 3604(c):

> [O]ther courts have construed the requirement in §
> 3604(c) as follows: the standard for a § 3604(c)
> violation is whether "an ad for housing suggests to an
> ordinary reader that a particular race is preferred or
> dispreferred for the housing in question." Ragin v.
> New York Times Co., 923 F.2d 995, 999 (2d Cir. 1991)
> (citing United States v. Hunter, 459 F.2d 205, 215
> (4th Cir. 1972) and Spann v. Colonial Village, Inc.,
> 899 F.2d 24 (D.C. Cir. 1990)); see also Jancik v.

21

Dep't of Housing & Urban Devel., 44 F.3d 553, 556 (7th
Cir. 1995) ("Significantly, no showing of a subjective
intent to discriminate is . . . necessary to establish
a violation of [§ 3604(c)]."); see also Ragin, 923
F.2d at 1000.

234 F. Supp. 2d 33, 78-79 (D. Mass. 2002).

While the statements in Langlois appeared in advertisements
and other publications intended to attract applicants to Section
8 rental assistance programs, courts have entertained § 3604(c)
claims based upon regulations published by entities such as the
Association.  See, e.g., Fair Housing Ctr. of the Greater Palm
Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc., 136 F.
Supp. 3d 1364, 1368 (S.D. Fla. 2015) (condominium rules alleged
to discriminate against children); Llanos v. Estate of Cohelo,
24 F. Supp. 2d 1052, 1060 (E.D. Cal. 1998) (apartment complex
rules that discriminated against children).  In light of cases
such as Fair Housing Center, and the court's obligation to
construe plaintiff's complaint liberally, see Erickson, 551 U.S.
at 94, the court concludes that plaintiff has stated a claim
upon which relief can be granted based on the publication of an
item in the Oak Brook newsletter stating that when considering
requests for exceptions to the Association's "no dog" policy,
the Association prefers to grant such exceptions to residents
who need "true service dogs," which could be construed as a
preference for unit owners with handicaps that require service

dogs over unit owners with handicaps that require emotional

support dogs.

As this case moves forward, Lath's § 3604(c) claim shall be

referred to as Count 4.

### e. ANSI Compliance

Cause 11 of the SAC is captioned "Non-compliance with ANSI

A117.1 Sec 804(f)(3)(C)(iii)."  Doc. no. 48-1, at 36.  The FAC

does not include a separate claim based upon ANSI 117.1, but

both the FAC and the SAC include this paragraph:

> Defendants engaged in discriminatory practices, by
> being non-compliant with the appropriate requirements
> of the American National Standard for buildings and
> facilities providing accessibility and usability for
> physically handicapped people (commonly cited as "ANSI
> 117.1").

Doc. no. 19 ¶ 26 (FAC); doc. no. 48-1 ¶ 26 (SAC).  However,

neither the 112 paragraphs of general allegations that precede

Cause 11 in the SAC nor the 186 paragraphs of factual

allegations that follow Cause 11 say anything further about ANSI

compliance.[10]  Neither the principal motion to dismiss the FAC

nor the ten defendants' objection to Lath's motion to amend the

---

[10] And, as best the court can tell, plaintiff does not
allege that he has any physical handicap, so it is difficult to
see how, with respect to ANSI compliance, he is "[a]n aggrieved
person," 42 U.S.C. § 3613(a)(1)(A), entitled to bring a claim
for an alleged failure to comply with ANSI.

FAC ever mentions the ANSI compliance claim asserted in Cause 11.

To be sure, a failure to comply with ANSI 117.1 could give rise to liability for discrimination under the FHA.  See 42 U.S.C. §§ 3604(f)(1), (3) & (4).  But because Lath has made no factual allegations concerning ANSI compliance, it is difficult to see how Cause 11 states a claim upon which relief can be granted.  See O'Shea ex rel. O'Shea v. UPS Ret. Plan, 837 F.3d 67, 77 (1st Cir. 2016) ("to survive a motion to dismiss, a complaint must contain sufficient factual material to state a facially plausible claim").  Accordingly, before he may proceed on Cause 11, Lath must show cause why the claim asserted therein should not be dismissed for failure to state a claim upon which relief can be granted.

As this case moves forward, Lath's § 3604(f)(2) ANSI compliance claim shall be referred to as Count 5.

### 2. Civil Rights Statutes

In Causes 21 and 31 of his SAC, Lath asserts claims arising under 42 U.S.C. §§ 1983, 1985(2), and 1996.  The court discusses each legal theory in turn.

### a. Section 1983

In Cause 31 of his SAC, through the vehicle of 42 U.S.C. § 1983, plaintiff accuses Morey, Klardie, Bisson, Taylor, and both

Vallees of violating his constitutional right to substantive due process by: (1) appointing Perry Vallee to the Association's board of directors; (2) applying his condominium fee to the payment of fines that were imposed upon him; and (3) preventing him from voting in a condominium election on grounds that he was not in good standing.  Cause 21 of the SAC is captioned "Deprivation of Civil Rights 42 U.S.C. 1981-1996 et. seq."  Doc. no. 48-1, at 72, and given that caption, Cause 21 may represent an attempt to assert a claim under § 1983.  Lath made claims in Count 10 of his FAC that are substantially similar to those asserted in Cause 31 of his SAC.  In both the principal motion to dismiss the FAC and in the ten defendants' objection to plaintiff's motion for leave to amend, defendants argue that plaintiff has failed to state a claim pursuant to § 1983 because he has not alleged that any of the actions on which he bases his § 1983 claims were undertaken under color of state law. Defendants are correct.

"42 U.S.C. § 1983 . . . furnishes a cause of action against any person who, while acting under color of state law, transgresses someone else's constitutional rights."  Alfano v. Lynch, 847 F.3d 71, 74 n.1 (1st Cir. 2017) (citing Kalina v. Fletcher, 522 U.S. 118, 123 (1997)).  To succeed on a § 1983 claim, a plaintiff "must show: (1) that the complained-of

25

conduct was committed under the color of state law, and (2) that
such conduct violated his constitutional or federal statutory
rights." Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir.
2016) (citing Chongris v. Bd. of Appeals, 811 F.2d 36, 40 (1st
Cir. 1987)).  The problem with Lath's § 1983 claims is that he
has not adequately alleged that any of the conduct he challenges
in those claims was undertaken under color of state law.

In Jarvis v. Village Gun Shop, Inc., 805 F.3d 1 (1st Cir.
2015), cert. denied, 136 S. Ct. 2020 (2016), a case in which the
plaintiff attempted to use § 1983 to sue "a privately owned
storage facility," id. at 4, the court of appeals "train[ed] the
lens of [its] inquiry on the 'under color of state law'
requirement," id. at 8.  The court began by noting that

> [b]ecause [the under color of state law] requirement
> is the functional equivalent of the Fourteenth
> Amendment's "state action" requirement, see Perkins v.
> Londonderry Basketball Club, 196 F.3d 13, 17 n.1 (1st
> Cir. 1999), "we regard case law dealing with either of
> these formulations as authoritative with respect to
> the other, and we use the terminologies
> interchangeably," Santiago [v. Puerto Rico], 655 F.3d
> [61,] 68 [(1st Cir. 2011)].

Id.  The court continued:

> When the named defendant in a section 1983 case is a
> private party, the plaintiff must show that the
> defendant's conduct can be classified as state action.
> See Rendell–Baker v. Kohn, 457 U.S. 830, 838 (1982).
> The state action inquiry is preliminary to, and
> independent of, the due process inquiry.  If there is
> no state action, the plaintiff's claim fails.  See id.

The bar for such a showing is set quite high, and we have cautioned that "[i]t is '[o]nly in rare circumstances' that private parties can be viewed as state actors." Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (quoting Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)) (alterations in original).  This inquiry is typically factbound.  See Brentwood Acad. v. Tenn. Secondary Sch. Athl. Ass'n, 531 U.S. 288, 295-96 (2001); Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961) (explaining that "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance").

Id., 805 F.3d at 8 (parallel citations omitted).

There are three ways in which a plaintiff may show that a private entity has acted under color of state law:

State action may be found if the private party "assumes a traditional public function when performing the challenged conduct," or if the private party's conduct is "coerced or significantly encouraged by the state," or if the private party and the state have become so intertwined that they were effectively "joint participant[s]" in the challenged conduct. Santiago, 655 F.3d at 68 (quoting Estades-Negroni, 412 F.3d at 5).

Id. (emphasis added).

In his SAC, plaintiff makes the following allegation in an attempt to satisfy the state action requirement: "defendants acted under the color of authority, granted to them under the NH Condominium Act and NH Voluntary Associations Act."  Doc. no. 48-1 ¶ 394.  Plainly, that is not an allegation that any defendant took any of the three challenged actions under state compulsion.  And almost as plainly, plaintiff does not

27

adequately allege that in taking the challenged actions, all of which involved the Association's governance, any defendant was "perform[ing] a service that, traditionally, the state has exclusively undertaken." Jarvis, 805 F.3d at 11.[11]

That leaves the possibility that defendants were engaged in joint action with the state, based upon the fact that the Association operates under one or more statutory schemes. However, "for purposes of demonstrating the required nexus between state action and private action, . . . it [is] insufficient simply to point to a state statute authorizing the actions of the private entity." Jarvis, 805 F.3d at 9 (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974); Perkins, 196 F.3d at 20). But a pair of authorizing statutes is the sole basis for Lath's contention that the § 1983 defendants engaged in joint action with the state. That is not enough. See Jarvis, 805 F.3d t 9; see also Alberto San, Inc. v. Consejo de Titulares del Condo. San Alberto, 522 F.3d 1, 4-5 (1st Cir. 2008) (affirming dismissal of § 1983 action against condominium

---

[11] Plaintiff does contend that "Oak Brook assum[es] a quasi-government function by providing heat and water to its residents." SAC (doc. no. 48-1) ¶ 112. Whether the provision of heat and water is a "traditional public function," Jarvis, 805 F.3d at 8, none of the conduct that plaintiff challenges through the vehicle of § 1983 involved the provision of heat or water. Thus, the Association's assumption of those functions did not make it a state actor for the purpose of plaintiff's § 1983 claims. See id.

board and owners, and ruling that board vote, taken in
conformance with Puerto Rico statute governing condominium
voters' rights, was not state action).

Because Lath has failed to adequately allege that any
defendant was acting under color of state law when engaging in
the conduct that allegedly violated his constitutional rights,
he has failed to state a § 1983 claim upon which relief can be
granted.  Thus, Cause 31 of the SAC is dismissed in its
entirety, and to the extent that Cause 21 asserts a § 1983
claim, it is also dismissed.

b. Section 1985(2)

Cause 21 of the SAC is captioned: "Deprivation of Civil
Rights 42 U.S.C. 1981-1996 et. seq."  Doc. no. 48-1, at 72.
Construing the SAC liberally, see Erickson, 551 U.S. at 94, the
court presumes that Lath intends for Cause 21 to encompass
claims under 42 U.S.C. § 1985(2) that are asserted either
expressly or implicitly in paragraphs 95, 97, 105, 118, and 120
of the SAC.  Those claims, in turn, appear to be rooted in Count
5 of the FAC, which asserts a claim for obstruction of justice,
in violation of both 42 U.S.C. § 1985(2) and 18 U.S.C. §§ 1501-
1521.  In the principal motion to dismiss the FAC, defendants
argue that Lath has not sufficiently alleged facts to support
the conspiracy aspect of his § 1985(2) claims, and that the

29

witness intimidation component of Count 5 of the FAC, asserted
in paragraph 118, fails because § 1985(2) applies only to
witnesses in proceedings pending in federal court.  In their
objection to Lath's motion for leave to amend, the ten
defendants do not specifically address plaintiff's § 1985(2)
claims.  For the reasons that follow, the § 1985(2) claims
asserted in paragraphs 95, 97, and 105 are dismissed, and before
plaintiff may proceed on the § 1985(2) claims asserted in
paragraphs 118 and 120, he must show cause why they should not
be dismissed.

"Section 1985 concerns conspiracies to violate civil
rights.  . . .  Section 1985(2) pertains to conspiracies to
obstruct justice or to interfere with witnesses." Diaz v.
Perez, Civ. Action No. 16-11860-RGS, 2016 WL 6871233, at *7 (D.
Mass. Nov. 21, 2016).  Section 1985(2) consists of two clauses.
The first prohibits the deterrence "by force, intimidation, or
threat, [of] any party or witness in any court of the United
States, from attending such court, or from testifying to any
matter pending therein . . . ." 42 U.S.C. § 1985(2).

> The second clause of Section 1985(2) creates a
> cause of action where "two or more persons conspire
> for the purpose of impeding, hindering, obstructing,
> or defeating, in any manner, the due course of justice
> in any State or Territory, with intent to deny to any
> citizen the equal protection of the laws. . . ."

30

Powell v. Massachusetts, No. 16-cv-30004-MGM, 2016 WL 7115887,
at *11 (D. Mass. Sept. 20, 2016) (quoting 42 U.S.C. § 1985(2)),
R. & R. adopted by 2016 WL 7118260 (Dec. 6, 2016).[12]  As
Magistrate Judge Robertson went on to explain:

> "There are . . . four elements of a § 1985(2) claim:
> (1) a conspiracy between two or more persons, (2) to
> impede, hinder, obstruct, or defeat, in any manner,
> the due course of justice in any State, (3) with
> invidiously discriminatory animus, (4) which results
> in injury to plaintiff." Bolduc v. Town of Webster,
> 629 F. Supp. 2d 132, 150-51 (D. Mass. 2009) (citing
> Greco v. Fitzpatrick, 59 F.3d 164, *1 (1st Cir. 1995)
> (unpublished disposition)).  A plaintiff may recover
> "only when the conspiratorial conduct of which he
> complains is propelled by 'some racial, or perhaps
> otherwise class-based, invidiously discriminatory
> animus.'" Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.
> 1996) (citing Griffin v. Breckenridge, 403 U.S. 88,
> 102 (1971)).  Thus, Plaintiff "must allege facts
> showing that (1) the defendants conspired against
> [him] because of [his] membership in a class, and (2)
> the criteria defining the class are invidious." Id.
> at 4.

Powell, 2016 WL 7115887, at *11 (emphasis added).  As for the
first element:

> Stating a claim under Section [1985] requires
> plausible allegations of an agreement among the
> conspirators to violate a plaintiff's rights (or
> factual allegations that allow the reasonable
> inference of such an agreement). See LeBaron v.
> Spencer, 527 Fed. Appx. 25, 33 (1st Cir. 2013);
> Williams v. City of Boston, 771 F. Supp. 2d 190, 204
> (D. Mass. 2011).  Further, "allegations of conspiracy
> must . . . be supported by material facts, not merely

---

[12] In light of the second clause of § 1985(2), the ten
defendants are incorrect in arguing that plaintiff's claim of
witness intimidation is fatally flawed because the witness at
issue was not involved in matters pending in federal court.

conclusory statements" and such claims of conspiracy
are subject to dismissal where the allegations
"neither elaborate [] nor substantiate[][the] bald
claims that certain defendants 'conspired' with one
another." Slotnick v. Garfinkle, 632 F.2d 163, 165–66
(1st Cir. 1980) (per curiam).

Olmo v. Narker, No. CV 14-13434-WGY, 2015 WL 4535669, at *3 (D.
Mass. July 27, 2015).[13]

To the extent that plaintiff's § 1985(2) claims are based
upon the facts alleged in paragraphs 95, 97, and 105 of the SAC,
those claims are dismissed.  That is because: (1) paragraphs 95,
97, and 105 all assert conspiracy claims while identifying only
a single defendant; and (2) a conspiracy necessarily involves
two or more persons, see Powell, 2016 WL 7115887, at *11.

That leaves two § 1985(2) claims based upon the factual
allegations in paragraphs 118 and 120 of the FAC.  Those
paragraphs do, in fact, allege conduct by two or more persons,
thus partially satisfying the conspiracy element of a § 1985(2)
claim.  But, it is far less clear that either of those two
paragraphs includes allegations sufficient to satisfy the
agreement aspect of a conspiracy claim.  However, even assuming
that the facts alleged in paragraphs 118 and 120 allow for a

---

[13] The first sentence of the quotation from Olmo actually
refers to § 1983, but both the context and the citation to
LaBaron make it clear that the reference to § 1983 was a
typographical error, and that the sentence was intended to refer
to § 1985.

reasonable inference of an agreement among the defendants mentioned in those paragraphs, there is another problem common to the claims asserted in both paragraphs.

As Judge Robertson pointed out in <u>Powell</u>, a § 1985(2) "plaintiff may recover only when the conspiratorial conduct of which he complains is propelled by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." 2016 WL 7115887, at *11 (citation and internal quotation marks omitted).  The only allegations of discriminatory animus to be found anywhere in either the FAC or the SAC concern the incident in which Warren Mills called Lath a "sand nigger."  Mills, however, is not identified as a defendant in any of the paragraphs of factual allegations that support plaintiff's § 1985(2) claims.  Accordingly, before plaintiff may proceed on his two remaining § 1985(2) claims, he must show cause why those claims should not be dismissed for failure to allege that the alleged acts of conspiracy were caused by invidiously discriminatory animus.

In addition to addressing the matter of animus, plaintiff's response to the court's show cause order should also address the following specific issues.  Paragraph 118 of the SAC accuses nine defendants of "individually or in concert, obstruct[ing] the administration of justice [through] witness tampering and

33

intimidation by threatening or caus[ing] to [be] threaten[ed], witness Jason Manugian and/or his family [with] bodily harm." Doc. no. 48-1 ¶ 118.  That allegation is highly conclusory; Lath says nothing at all about who did what to Manugian to threaten or intimidate him.[14]  That is a problem because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim upon which relief can be granted]." Ashcroft, 556 U.S. at 678.  And in paragraph 120, plaintiff does not even identify any specific defendants, much less allege the conduct on which the claim is based.  The foregoing deficiencies in paragraphs 118 and 120 must be resolved before Lath may proceed on his two remaining § 1985(2) claims.

As this case moves forward, the § 1985(2) claims arising from the conduct alleged in paragraphs 118 and 120 of the SAC shall be referred to as Counts 6 and 7.

### c. Section 1986

Finally, plaintiff accuses Morey, Taylor, Klardie, Bisson, and both Vallees of violating 42 U.S.C. § 1986 by failing to

_____

[14] Moreover, the evidence Lath cites in his SAC to support this claim, a transcript of a voice mail from Manugian, see doc. no. 48-334, shows that Manugian became reluctant to testify for Lath in a court case, but does not support an allegation that two or more persons threatened Manugian to prevent him from testifying, with the intent to deprive Lath of the equal protection of the laws.

prevent the violations of § 1985(2) discussed in the previous section.  See SAC (doc. no. 48-1) ¶ 119.  Plaintiff's § 1986 claim rises and falls with his § 1985(2) claims.  Because the status of plaintiff's § 1985(2) claims is yet to be determined, his § 1986 claim is not subject to dismissal at this point, and shall remain a part of the case.  The status of the § 1986 claim is, of course, subject to review depending upon the disposition of the § 1985(2) claims.

As this case moves forward, Lath's § 1986 claim shall be referred to as Count 8.

### 3. Obstruction of Justice (Criminal)

In addition to asserting obstruction of justice claims under 42 U.S.C. 1985(2), plaintiff also asserts, in Cause 32 of the SAC, that Dufresne, Grandmaison, the Association, Sample, Bisson, Morey, and someone named Dorothy Vachon committed various acts that violated 18 U.S.C. § 1512.  Cause 32, in turn, has its origins in the second of two claims captioned "Count 5" in the FAC,[15] which asserts, in a single count, that various defendants obstructed justice, in violation of both 42 U.S.C. § 1985(2) and 18 U.S.C. §§ 1501-1521.

_____

[15] Plaintiff's FAC contains two claims captioned Count 4, two claims captioned Count 5, and two claims captioned Count 11.

As defendants argue in the principal motion to dismiss the FAC, 18 U.S.C. § 1512 does not provide for a private right of action.  As Magistrate Judge Collings has explained:

> Title 18 U.S.C. § 1512 is a federal criminal statute
> that prohibits the obstruction of justice by tampering
> with a witness in a pending federal proceeding.  As
> discussed above, as a private citizen, Cichocki does
> not have standing to initiate a criminal action
> against another.  Keenan [v. McGrath], 328 F.2d 610,
> 611 [(1st Cir. 1964)].  Further, 18 U.S.C. § 1512 does
> not provide for a private cause of action.  See Reilly
> v. Concentrex, Inc., No. CIV 99-983-HU, 1999 WL
> 1285883 (D. Or. Nov. 19, 1999) (no private cause of
> action under Section 1512); Gipson v. Callahan, 18 F.
> Supp. 2d 662, 668 (W.D. Tex. 1997) (same); Naehu v.
> Provest, No. CIV. 97-00262 ACK, 1997 WL 1037947, *2
> (D. Haw. Aug. 12, 1997) (same).

Cichocki v. Mass. Bay Cmty. Coll., Civ. Action No. 12-10728-GAO, 2013 WL 783068, at *10 (D. Mass. Feb. 28, 2013).  Because 18 U.S.C. § 1512 does not provide for a private cause of action, plaintiff has not stated a federal claim for obstruction of justice under that statute, and the claims asserted in Cause 32 of the SAC are dismissed.

### 4. RICO

Cause 26 of the SAC is captioned "Racketeering Activities Under R.I.C.O. Predicate Act – Mail Fraud – 18 U.S.C. 1341," doc. no. 48-1, at 76, and an unnumbered claim that starts on page 90 of the SAC is captioned "Conspiracy to Violate and Violations of 18 USC 1961-1968a (RICO), Tortious Interference

with Contract."[16]   Those claims, in turn, originated with Count

14 of the FAC, which is captioned "Conspiracy and Fraud Pursuant

to Racketeering Influenced Corrupt Organization (RICO), 18

U.S.C. (sec) 1962, and Request for Treble Damages."  Doc. no.

19, at 76.  In the principal motion to dismiss the FAC,

defendants argue that plaintiff does not adequately allege facts

to support the racketeering activity element of a RICO

conspiracy claim.  In their objection to plaintiff's motion for

leave to amend, the ten defendants argue that plaintiff has

failed to allege fraud with adequate specificity and that he has

failed to adequately allege mail fraud.  For the reasons that

follow, Lath's RICO claims are dismissed.

Under the heading "Prohibited activities," the RICO statute

provides, in pertinent part:

> **(c)** It shall be unlawful for any person employed
> by or associated with any enterprise engaged in, or
> the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity or
> collection of unlawful debt.

---

[16] New Hampshire recognizes a cause of action for tortious
interference with contractual relations.  See City of Keene v.
Cleaveland, 167 N.H. 731, 738 (2015).  But plaintiff alleges no
facts corresponding to any of the elements of that tort.  So, to
the extent, if any, that the unnumbered claim on page 90 is
intended to assert a claim for tortious interference with
contractual relations, that claim is dismissed.  See O'Shea, 837
F.3d at 77.

> **(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.  The statute defines "racketeering activity" to include conduct that violates any one of several dozen specific provisions of the U.S. criminal code.  See 18 U.S.C. § 1961(1)(B).  Finally, the statute gives a private right of action to parties injured by conduct proscribed by § 1962.  See 18 U.S.C. § 1964.

While the SAC makes passing references to a deprivation of honest services, see doc. no. 48-1 ¶¶ 370-71, and embezzlement, see id. ¶ 404, the racketeering activity on which plaintiff bases his RICO claim and his RICO conspiracy claim is mail fraud, in violation of 18 U.S.C. § 1341.  And, indeed, mail fraud is listed among the criminal acts that qualify as racketeering activity under RICO.  See 18 U.S.C. § 1961(1)(B).  But, as the ten defendants correctly point out, plaintiff has failed to allege facts that, if proven, would establish a violation of the mail fraud statute.

Plaintiff accuses defendants of committing mail fraud by refusing, on several occasions, to sign for and accept postal deliveries on his behalf when he was not at home to receive them himself.  See SAC (doc. no. 48-1) ¶¶ 349, 350, 358, and 359.  Some of those deliveries, plaintiff alleges, contained

38

"important medications," id. ¶ 366, while others contained
"information concerning his secret security clearance, that
contained private and privileged information filed with the
Defense Contract Management Agency," id. ¶ 74.  According to
plaintiff, the Association owed him a contractual duty to accept
mail on his behalf, and committed mail fraud by failing to do
so.

Under the federal criminal code, mail fraud has the
following elements:

> (1) a scheme to defraud based on false pretenses; (2)
> the defendant's knowing and willing participation in
> the scheme with the intent to defraud; and (3) the use
> of interstate mail communications in furtherance of
> that scheme.

United States v. Tavares, 844 F.3d 46, 58 (1st Cir. 2016)
(quoting United States v. Hebshie, 549 F.3d 30, 35-36 (1st Cir.
2008) (internal formatting omitted); citing United States v.
Cheal, 389 F.3d 35, 41 (1st Cir. 2004)).  The court of appeals
elaborated:

> "The federal mail fraud statute does not purport
> to reach all frauds, but only those limited instances
> in which the use of the mails is a part of the
> execution of the fraud, leaving all other cases to be
> dealt with by appropriate state law."  Schmuck v.
> United States, 489 U.S. 705, 710 (1989) (quoting Kann
> v. United States, 323 U.S. 88, 95 (1944)).  "[T]he
> mailing must be 'for the purpose of executing the
> scheme, as the statute requires.'"  United States v.

Maze, 414 U.S. 395, 400 (1974) (quoting Kann, 323 U.S. at 94).

Tavares, 844 F.3d at 58 (parallel citations omitted).

Based upon Tavares, it is evident that Lath has failed to allege facts sufficient to support his assertion that one or more of the defendants committed mail fraud.  A person commits mail fraud by using the mails to defraud another.  Here, however, plaintiff does not allege that any defendant used the mails in any way but, rather, he alleges that some defendants prevented him from receiving his mail.  To be sure, the federal criminal code makes it unlawful to: (1) "obstruct[] or retard[] the passage of the mail," 18 U.S.C. § 1701; (2) steal mail, see 18 U.S.C. § 1708; and (3) receive or possess stolen mail, see id.  And, while plaintiff may have alleged facts that would support a claim that one or more of the defendants obstructed or stole his mail, a matter on which the court offers no opinion, those crimes do not qualify as racketeering activity for purposes of the RICO statute.

Because plaintiff has not alleged facts sufficient to establish that any defendant engaged in racketeering activity, see 18 U.S.C. § 1961(a), he has necessarily failed to state a claim upon which relief can be granted under RICO.  Accordingly, both Cause 26 of the SAC and the unnumbered RICO conspiracy claim asserted on page 90 of the SAC are dismissed.

40

### 5. Negligence

In Cause 33 of his SAC, plaintiff charges Grandmaison, Sample, Klardie, Morey, and the Association with negligence for failing to install security cameras in the Oak Brook parking lot.  Cause 33 is an abbreviated version of Count 1 from the FAC, in which plaintiff identified other acts of negligence surrounding the Association's failure to install security cameras and asserted that he had been harmed by defendants' negligence because his cars had been vandalized while parked in the Oak Brook parking lot.  In their objection to plaintiff's motion for leave to amend, the ten defendants argue that plaintiff has failed to state a claim for negligence because he has failed to identify "any duty that he claims Defendants have breached with respect to him."  Doc. no. 53 ¶ 14.  While plaintiff has attempted to identify a duty, the duty he identifies is insufficient as a matter of law.

Under New Hampshire law, a "plaintiff [claiming negligence] has the 'burden to prove facts upon which the law imposes a duty of care, breach of that duty, and so-called proximate causation of harm."  Yager v. Clauson, 169 N.H. 1, 5 (2016) (quoting N. Bay Council, Inc. v. Bruckner, 131 N.H. 539, 542 (1989)).  "Whether a duty exists in a particular case is a question of law."  Riso v. Dwyer, 168 N.H. 652, 654 (2016) (citing England

41

v. Brianas, 166 N.H. 369, 371 (2014)).  In Cause 33 of his SAC,
plaintiff claims that defendants were aware of vandalism in the
Oak Brook parking lot and, thus, were "under the duty to
exercise reasonable care, by installing security cameras in the
premises, . . . commensurate with the foreseeable risk of danger
to the two cars of the Plaintiff and other residents."  Doc. no.
48-1 ¶ 406.[17]  Defendants, however, were under no such duty.

In Walls v. Oxford Management Co., this court certified the
following question to the New Hampshire Supreme Court: "Does New
Hampshire law impose a duty on landlords to provide security to
protect tenants from the criminal attacks of third persons?"
137 N.H. 653, 655 (1993).  The court answered:

> We hold that while landlords have no general duty
> to protect tenants from criminal attack, such a duty
> may arise when a landlord has created, or is
> responsible for, a known defective condition on a
> premises that foreseeably enhanced the risk of
> criminal attack.  Moreover, a landlord who undertakes,
> either gratuitously or by contract, to provide
> security will thereafter have a duty to act with
> reasonable care.  Where, however, a landlord has made
> no affirmative attempt to provide security, and is not
> responsible for a physical defect that enhances the
> risk of crime, we will not find such a duty.  We
> reject liability based solely on the landlord-tenant
> relationship or on a doctrine of overriding
> foreseeability.

---

[17] This citation is to the paragraph 406 that starts on page
90 of the SAC, not the paragraph 406 that appears on page 91.

Id. at 659.  Because plaintiff has alleged no facts that would establish either of the two recognized exceptions to the general rule that landlords have no duty to protect tenants from the criminal acts of third parties, the negligence claim he asserts in Cause 33 fails to state a claim upon which relief can be granted and, therefore, is dismissed.

### 6. Eavesdropping

In Cause 18 of his SAC, plaintiff asserts a claim for eavesdropping, in violation of RSA 570-A.  As best the court can tell, that claim is based upon allegations that: (1) "[s]hortly after [the] . . . incident [involving Mills and Lath], Defendant Betty Mullen . . . installed cameras that were capable of recording both images and sound, in and/or around Lath's residence and its curtilage," doc. no. 48-1 ¶ 311; and (2) on November 22, 2015, Bisson surreptitiously recorded the Association's annual meeting, see id. ¶ 233.[18]  In his FAC, plaintiff asserted claims for invasion of privacy and eavesdropping, and supported both claims with allegations concerning Mullen's installation of cameras.  See doc. no. 19 ¶¶ 33, 152.  Mullen moved to dismiss the eavesdropping claim

---

[18] Plaintiff also alleges that Perry Vallee installed a camera in his bathroom, see SAC (doc. no. 48-1) ¶ 232, but he does not appear to base his eavesdropping claim on that factual allegation.

asserted against her in the FAC on grounds that the court lacked
supplemental jurisdiction over it.[19]   Bisson objects to
plaintiff's motion for leave to amend on grounds that the SAC
does not state a claim for eavesdropping against him because
Lath did not have a reasonable expectation of privacy at the
meeting where Bisson allegedly recorded his verbal
communications.   Bisson's objection to plaintiff's eavesdropping
claim is meritorious but, at this juncture, Mullen's is not.

The problem with plaintiff's eavesdropping claim against
Bisson is that he has not adequately alleged that Bisson
intercepted an oral communication.   New Hampshire law gives a
civil cause of action to "[a]ny person whose . . . oral
communication is intercepted . . . against any person who
intercepts . . . such communication[]."   RSA 570-A:11.   The
statute defines "interception" to "mean[] the aural or other
acquisition of, or the recording of, the contents of any . . .
oral communication through the use of any electronic,
mechanical, or other device."   RSA 570-A:1, III.   "Oral

---

[19] In the principal motion to dismiss the FAC, defendants
argue that the court should not exercise supplemental
jurisdiction over plaintiff's eavesdropping claim on grounds
that Oak Brook has already prevailed on a similar claim in an
action in the Superior Court.   But that argument is based upon a
characterization of Counts 3 and 4 of the FAC as being based on
allegations concerning the recording of the Association's 2015
annual meeting.   The claims asserted in Counts 3 and 4, however,
are based exclusively on Mullen's installation of cameras.

communication," in turn, "means any verbal communication uttered by a person who has a reasonable expectation that the communication is not subject to interception, under circumstances justifying such expectation."  RSA 570-A:1, II.

Plaintiff's claim fails because he has not alleged any communication on his part that satisfies the statutory definition of "oral communication."  Construing plaintiff's complaint liberally, see Erickson, 551 U.S. at 94, the communications on which he bases his eavesdropping claim against Bisson are things he said at the Association's 2015 annual meeting.  However, the Association's by-laws, which plaintiff attached to his SAC, provide that the secretary of the Association shall keep minutes of the Association's meetings. See doc. no. 48-137, at 10.  Thus, Lath had no reasonable expectation that his verbal communications at the annual meeting were not subject to interception.  As a result, nothing he said at the annual meeting was an oral communication for purposes of the New Hampshire eavesdropping statute.  Absent an allegation that Bisson intercepted an oral communication, plaintiff has failed to state a claim upon which relief can be granted against Bisson for eavesdropping.  Accordingly, Bisson is entitled to dismissal of plaintiff's eavesdropping claim against him.

Mullen, however, does not argue that plaintiff has failed to adequately state an eavesdropping claim against her.  Rather, she argues that plaintiff has asserted no federal claims against her and that plaintiff's state law eavesdropping claim is so unrelated to his federal claims that the court lacks supplemental jurisdiction over it under 28 U.S.C. § 1367(a). Alternatively, she argues that even if the court does have jurisdiction under § 1367(a), it should decline to exercise that jurisdiction because "the [eavesdropping] claim substantially predominates over the claim or claims over which the district court has original jurisdiction," 18 U.S.C. § 1367(c)(2), and because "the district court has dismissed all claims over which it has original jurisdiction," 18 U.S.C. § 1367(c)(3).  The court is not persuaded by Mullen's arguments.

First of all, the court cannot agree with Mullen that plaintiff's allegation that she installed cameras trained on his unit is "entirely distinct from the discrimination, Fair Housing, civil rights, and racketeering claims alleged under federal law against other Defendants."  Def.'s Mem. of Law (doc. no. 33-1) 4.  To the contrary, in paragraphs 33 through 36 of both the FAC and the SAC, plaintiff identifies Mullen's installation of cameras as contributing to the hostile housing environment he faced at Oak Brook (Count 1) and as an act of

46

retaliation (Count 3(a)).  In other words, plaintiff's
allegations about Mullen's installation of cameras support both
his state law eavesdropping claim against her and two of his FHA
claims.  While plaintiff may not prevail on the claims asserted
in Counts 1 and 3(a), their presence in this case gives the
court supplemental jurisdiction over plaintiff's state law
eavesdropping claim under § 1367(a).  Moreover, as the court has
not dismissed all of the claims over which it has original
jurisdiction, § 1367(c)(3) does not apply, and given the scope
of plaintiff's FHA claims alone, it can hardly be said that
plaintiff's eavesdropping claim predominates over the federal
claims that remain viable.  In sum, the court has supplemental
jurisdiction over plaintiff's eavesdropping claim against
Mullen, and is not inclined to decline that jurisdiction
pursuant to §§ 1367(c)(2) or (3).

In sum, plaintiff may proceed on his eavesdropping claim
against Mullen, and as this case moves forward, that claim shall
be referred to as Count 9.

### 7. Invasion of Privacy - Intrusion on Seclusion

In Cause 27 of his SAC, plaintiff asserts a claim for
invasion of privacy, based upon allegations that Perry Vallee
installed a camera in his unit.  He appears not to have asserted
any such claim in the FAC; the invasion of privacy claim in his

47

FAC is limited to allegations concerning Mullen's installation
of cameras.

The ten defendants argue that Cause 27 "could not survive a
motion to dismiss because Plaintiff already raised it in a New
Hampshire state court, and it is entirely unrelated to any other
claim in the Second Amended Complaint."  Defs.' Joint Obj. (doc.
no. 53) ¶ 10.  In defendants' view, because "Plaintiff has
already raised his invasion of privacy claim in state court, it
would be contrary to all of the policies underlying supplemental
jurisdiction for this Court to address that claim."  Id.  The
court is not persuaded.  Just as plaintiff's eavesdropping claim
against Mullen is sufficiently related to his FHA claims, his
invasion of privacy claim is sufficiently related to his civil
conspiracy claim, discussed below, to establish the court's
supplemental jurisdiction over it under 28 U.S.C. § 1367(a).[20]

Based upon the foregoing, plaintiff may proceed on his
invasion of privacy claim against Parry Vallee, and as this case
moves forward, that claim shall be referred to as Count 10.
That said, the court notes that the ten defendants have
suggested that the claim asserted in Count 10 has already been
litigated elsewhere.  Nothing in this order shall preclude

---

[20] In that claim, plaintiff charges Mullen with
participating in a conspiracy to violate his rights under the
FHA.

defendants from invoking the doctrines of res judicata or collateral estoppel at some point down the line.

### 8. Invasion of Privacy - False Light

In Cause 29 of his SAC, plaintiff asserts a claim for invasion of privacy, based upon allegations that in a case in the Superior Court, Dufresne introduced statements and documents implying that Lath was suffering from a mental illness, thus placing him in a false light.  Plaintiff made the same claim in Count 4 of his FAC.  Dufresne has neither moved to dismiss the FAC nor objected to plaintiff's motion for leave to amend it.  As the court has been presented with no basis for dismissing plaintiff's invasion of privacy claim against Dufresne, he may proceed on it.  As this case moves forward, that claim shall be referred to as Count 11.

### 9. Defamation

In Cause 30 of his SAC, plaintiff asserts a claim for defamation, based upon allegations that in a case in the Superior Court, Dufresne introduced statements about him made by Barbara Belware that brought him into disrepute.  Plaintiff made the same claim in the first Count 5 of his FAC.  For the same reasons that apply to plaintiff's false light invasion of privacy claim, his defamation claim against Dufresne may

proceed.  As this case moves forward, that claim shall be referred to as Count 12.

### 10. Malicious Prosecution

In Cause 16 of his SAC, plaintiff asserts a claim against "Defendants and their agents," doc. no. 48-1 ¶ 244, for malicious prosecution.  That claim arises from the dismissal of a stalking petition that had been filed against Lath by a now-deceased former neighbor, Gail LaBuda.  No such claim appears in the FAC.  In their objection to plaintiff's motion for leave to amend, the ten defendants argue, generally, that Cause 16 does not state a claim upon which relief can be granted.  The court agrees.

Under New Hampshire law, "[t]he four elements of a claim for malicious prosecution are: (1) the plaintiff was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor." Farrelly v. City of Concord, 168 N.H. 430, 445 (2015) (citing Ojo v. Lorenzo, 164 N.H. 717, 727 (2013)).  The dismissed stalking petition on which plaintiff bases his malicious prosecution claim was initiated by Gail LaBuda, who died on February 9, 2016.  See SAC (doc. no. 48-1) ¶ 248.  In addition to being deceased, LaBuda is not a defendant in this action.

50

Accordingly, plaintiff has failed to state a claim upon which

relief can be granted for malicious prosecution, which entitles

all defendants to dismissal of the claim asserted in Cause 16.

### 11. Abuse of Legal Process

In Cause 17 of his SAC, plaintiff asserts a claim for abuse

of process against "Defendants."  Doc. no. 48-1 ¶ 313.

Specifically, he claims:

> Defendants abused the legal process [through] the
> pleading of a stalking petition and various baseless
> complaints concerning the plaintiff when the defendant
> (1) entertained an ulterior motive in using the Law
> and (2) in a wrongful manner to harass the Plaintiff
> (3) committed this [willful] act [through] the
> coercion to obtain a collateral advantage in defending
> the complaints pending before the Commission or run
> Lath out of money.

Id.[21]  The "various baseless complaints" to which plaintiff

refers in paragraph 313 appear to be these:

> [a]fter having dual filed a complaint of
> discrimination with [the] HRC and [the] EEOC, against
> defendants, Warren Mills, Vickie Grandmaison and Scott
> Sample . . . Defendants William Quinn Morey, Scott

---

[21] Plaintiff makes another allegation that is apparently
intended to support a claim for abuse of process:

> Cyndy Camp and Michael Camp, abused the judicial
> process by irregularly, corruptly, improperly or
> wrongfully using a judicial proceeding, in the
> furtherance of the retaliation against Lath, by
> alleging Lath has stalked Board member, Gail Labuda
> since June 8, 2014.

SAC (doc. no. 48-1) ¶ 66.  However, neither of the Camps is a
defendant in this action, so the foregoing allegations are
irrelevant.

> Sample, Vickie Grandmaison, Betty Mullen and other
> members of the board, including Gail Labuda, filed [a]
> multitude of false and baseless claims, with the
> Manchester Police Department, Manchester Fire
> Department, New Hampshire Department of Elderly
> Services, alleging Lath to be an "arsonist" and a
> "murderer", that initiated or caused to [be]
> initiate[d] criminal or civil proceedings against the
> Plaintiff.
>
> The said Defendants were without any reasonable
> grounds whatsoever, to believe that the allegations
> were true, and in some cases, staged the reasons
> themselves for criminal claims made with the Police
> and Fire Department.  Such actions . . . were
> committed with the sole purpose of intimidating and
> harassing the Plaintiff, or creat[ing] a "quid pro quo
> harassment" and "hostile environment."

SAC (doc. no. 48-1) ¶¶ 38-39.  No claim for abuse of process

appears in plaintiff's FAC.  In their objection to plaintiff's

motion for leave to amend, the ten defendants argue, generally,

that Cause 17 does not state a claim upon which relief can be

granted.  The court agrees.

In New Hampshire, "[a] party claiming abuse of process must

prove the following elements: (1) a person used (2) legal

process, whether criminal or civil, (3) against the party (4)

primarily to accomplish a purpose for which it is not designed

and (5) caused harm to the party (6) by the abuse of process."

Tessier v. Rockefeller, 162 N.H. 324, 335 (2011) (quoting Long

v. Long, 136 N.H. 25, 29 (1992)).  As the Tessier court further

explained:

> The gravamen of the misconduct for which [liability
> for abuse of process] is imposed is <u>not</u> the wrongful
> procurement of legal process or the wrongful
> initiation of criminal or civil proceedings . . . .
> The subsequent misuse of the process, though properly
> obtained, constitutes the misconduct for which the
> liability is imposed.

162 N.H. at 335 (quoting Long, 136 N.H. at 29-30) (emphasis
added).

Here, even viewing plaintiff's SAC most liberally, <u>see</u>
Erickson, 551 U.S. at 94, all plaintiff alleges is the wrongful
initiation of criminal or civil proceedings.  That is
insufficient to state a claim for abuse of process.  <u>See</u>
Tessier, 162 N.H. at 335.  Accordingly, all defendants are
entitled to dismissal of the claim asserted in Cause 17.

12. Breach of the Implied Covenant

In Cause 15 of his SAC, plaintiff asserts a claim for
breach of the implied covenant of good faith and fair dealing.
While plaintiff's style of pleading makes it difficult to
ascertain the basis for Cause 15, this paragraph appears to
contain his claim:

> [W]ith an intent to retaliate against Lath for having
> filed a complaint with the Human Rights Commission and
> [the] EEOC, in or around October 2015, Defendants
> Scott Walker Sample, William Quinn Morey, Cheryl
> Vallee, Perry Vallee, John Bisson, Vickie Lynn Davis
> Grandmaison and Patty Taylor, either collectively or
> in a conspiracy or individually, and without any
> notice, refused to accept any packages and mail for
> Lath, a service that Lath is promised [through] the
> implied covenants, and for which Lath contributes his

53

share, to the Common Assessment Fund, pursuant to NH
RSA 356-B.

SAC (doc. no. 48-1) ¶ 74.[22]  In the section of the SAC devoted to

his RICO claim, plaintiff makes the following factual

allegations that appear to pertain to his claim for breach of

the implied covenant:

> Orientation information is provided to every new
> resident who decides to make Oak Brook, his/her home.
> Defendant Bisson testified that the orientation
> information is an implied covenant.  SAC ¶ 342
> (citations to the record omitted).

> This Orientation information, states "UPS and
> other packages will be accepted at the office if you
> are not home at the time of delivery."  Id. ¶ 344
> (citation to the record omitted).

> On October 10, 2015 Lath received a USPS slip
> indicating package is "at clubhouse."  When Lath went
> to the club house to pick [up] the package Defendants
> and [their] agents conceded that Lath's package was
> not there.  Id. ¶ 349 (citation to the record
> omitted).

> On October 19, 2015, another package was denied
> by Defendants and [their] agents.  Another UPS package
> slip stated that it was "left at office."  When Lath
> went to retrieve the package, it was not there.  Id. ¶
> 350 (citations to the record omitted).

---

[22] Plaintiff also asserted a claim for breach of the implied
covenant of good faith and fair dealing in the first Count 11 of
his FAC, but the breach alleged in Count 11 was the application
of his condominium fee to the satisfaction of purportedly
unlawful fines imposed against him by the Association, not the
Association's refusal to accept packages for him.  Even when the
court construes the SAC liberally, see Erickson, 551 U.S. at 94,
plaintiff's claim for breach of the implied covenant of good
faith and fair dealing appears to be based solely upon
defendants' failure to accept his mail.

"[P]rior to October 2015, Lath's packages were being
accepted by office staff.  Despite [the] "promise" to
accept packages, that [was] made during the
orientation and again in August 2014, and irrespective
of the fact, that Lath's packages were being accepted
until October 2015, Grandmaison, testified, "it was
never required that we [office] ever take packages."
Id. ¶ 358 (citation to the record omitted).

    Another package which the mail carrier attempted
to deliver was mishandled by the Defendants and their
agents.  Id. ¶ 358 (citations to the record omitted).

    On November 05, 2016, Cheryl Vallee refused to
accept another package of Lath['s], when Lath asked
his friend and neighbor, Barbara Belware, to pick up
the package.  Vallee "did not leave the office to
verify that Lath's package was in the mail room" but
rather stated, "We do not have his package, how do I
know where they are . . ."  Id. ¶ 359 (citation to the
record omitted).

In their objection to plaintiff's motion for leave to amend, the

ten defendants argue, generally, that Cause 15 does not state a

claim upon which relief can be granted.  While the SAC does not

state a claim for breach of the implied covenant of good faith

and fair dealing, it does state a claim for breach of contract.

    In Centronics Corp. v. Genicom Corp., 132 N.H. 133 (1989),

the New Hampshire Supreme Court explained that in its cases, it

had recognized an implied covenant of good faith and fair

dealing "in three distinct categories of contract cases: those

dealing with standards of conduct in contract formation, [those

dealing] with termination of at-will employment contracts, and

[those dealing] with limits on discretion in contractual

55

performance." Id. at 139.  It is self-evident that this case does not fall into either of the first two categories.  Nor does it fit into the third.

A case falls into the third category when the underlying agreement "confer[s] upon the defendant a degree of discretion in performance tantamount to a power to deprive the plaintiff of a substantial proportion of the agreement's value." Id. at 144. For an example of such a contract, the Centronics court turned to "New Hampshire's seminal case on the implied obligation of good faith performance," id. at 141, which involved "a contract to pay $200 a month for such personal services as the plaintiff, in his sole discretion, may render," id. (quoting Griswold v. Heat Inc., 108 N.H. 119, 124 (1967)) (internal quotation marks and brackets omitted).  In Griswold, the court relied upon the implied covenant to hold that the contract at issue "required the plaintiff to provide a level of services consistent with good faith." Centronics, 132 N.H. at 141.

Here, plaintiff does not allege the existence of a contract such as the one in Griswold.  Rather, he alleges that he had an express agreement with the Association that required the Association to accept his mail.  Thus, he has not stated a claim for breach of the implied covenant of good faith and fair dealing, but he has stated a claim for breach of contract.

56

As this case moves forward, Lath's breach of contract claim against the Association shall be referred to as Count 13.

### 13. Proxy Abuse

In Cause 20 of his SAC, plaintiff asserts a claim captioned "Proxy Abuse: RSA 356-B:39 (III)-(IV), RSA 292:6-b (IV)," doc. no. 48-1, at 72, which is the same claim that he asserted as the second Count 11 in his FAC, see doc. no. 19, at 67. Broadly speaking, that claim is based upon allegations concerning the use of proxies during Association elections and, in particular, the format of the proxy form and defendants' use of the proxy process to retain their seats on the Association's board of directors. In the principal motion to dismiss the FAC, defendants do not address the merits of plaintiff's proxy abuse claim but, rather, argue that the court "should . . . decline to exercise supplemental jurisdiction over Plaintiff's proxy abuse claim as it raises complex issues regarding the use of proxies during condominium association elections." Defs.' Mem. of Law (doc. no. 26-1) 18. The court agrees.

To begin, it is far from clear that the court has supplemental jurisdiction over plaintiff's proxy abuse claim in the first instance. The federal FHA and civil rights claims that remain in this case are based upon allegations concerning conduct directed toward Lath. The conduct on which the proxy

abuse claim is based seems entirely unrelated to the conduct on which the FHA and civil rights claims are based, which strongly suggests a lack of supplemental jurisdiction.  See 28 U.S.C. § 1367(a).  But, even if the court has supplemental jurisdiction over plaintiff's proxy abuse claim, § 1367(c)(1) counsels against exercising that jurisdiction.  Plaintiff's proxy abuse claim arises primarily under a provision in New Hampshire's Condominium Act that has been the subject of no reported decisions from the New Hampshire Supreme Court.  Thus, resolution of that claim will necessarily involve dealing with "a novel . . . issue of State law," id., and the court declines to do so.  Accordingly, the claim asserted in Cause 20 is dismissed for want of supplemental jurisdiction.

### 14. Theft by Deception

In Cause 24 of his SAC, Lath asserts that "[d]efendants committed the crime of theft by deception," doc. no. 48-1 ¶ 327, and then he goes on to make allegations concerning purportedly false representations that defendants made about the amount of money the Association spent on fire alarms, water, and sewerage. No claim for theft by deception appears in plaintiff's FAC.  In their objection to plaintiff's motion to amend, the ten defendant argue, generally, that Cause 24 does not state a claim upon which relief can be granted.  The court agrees.  By

invoking RSA 637:4 as the legal basis for the claim he asserts

in Cause 24, plaintiff demonstrates why that claim must be

dismissed.  RSA 637:4 is a part of the New Hampshire criminal

code and, as such, does not provide a private right of action.

Accordingly, defendants are entitled to dismissal of the claim

asserted in Cause 24.

### 15. Embezzlement

In Cause 23 of his SAC, plaintiff asserts a claim captioned

"Embezzlement from Common Assessment Funds."  Doc. no. 48-1, at

72.  This is his embezzlement claim in full:

> Defendants, their agents and employees have embezzled
> from this Common Assessment fund that residents and
> owners entrusted the Defendants with.  Defendants
> wrongfully appropriated these funds by inflating the
> amounts that were actually billed for fire alarms and
> other utilities such as gas, water, sewer, electricity
> and professional services.  Defendants were in a
> position of trust, such as a member of the board, an
> employee or otherwise a contractor.

Id. ¶ 326.  No such claim appears in plaintiff's FAC.  In their

objection to plaintiff's motion to amend, the ten defendant

argue, generally, that Cause 23 does not state a claim upon

which relief can be granted.  They are correct.

While Cause 23 is captioned "Embezzlement," it is best

understood as a claim for theft by unauthorized taking or

transfer."  See RSA 637:3, II.  Because RSA 637:3, II is a part

of the New Hampshire criminal code, the claim plaintiff asserts

59

in Cause 23 is dismissed for the same reasons that apply to Cause 24, plaintiff's claim for theft by deception.

### 16. Conspiracy

In Cause 14 of his SAC, plaintiff asserts a claim that bears the one-word caption "Conspiracy." Doc. no. 48-1, at 36. That claim appears to have originated with Count 13 of the FAC, which asserts:

> (a) the Defendant, its agents and/or employees, and each of them ("coconspirators"), committed the unlawful, tortious acts, complained herein above, in this cause of action, jointly and in individual capacity as actors in a civil conspiracy (b) to harass the Plaintiff and cause the Plaintiff financial, emotional and mental injury, and injury to Plaintiff's reputation (c) and such purposes were either achieved under the pretext and guise of fulfilling the covenants of the Condominium instruments, or such acts, that are complained herein above, were negligently purported [sic] by the coconspirators (d) that the coconspirators had an agreement on their course of action to conceal such lawful acts (e) and all such alleged actions and conduct of the coconspirators, as complained [of] in this cause of action, were tortious and unlawful.

Doc. no. 19 ¶ 226. In the principal motion to dismiss the FAC, defendants argue that the court should decline to exercise supplemental jurisdiction over plaintiff's claim for civil conspiracy because that cause of action "involve[s] different elements than Plaintiff's Fair Housing Act claims and relate[s] to different facts." Defs.' Mem. of Law (doc. no. 26-1) 17. In his SAC, plaintiff repeats the statement of his claim from the

FAC.  See doc. no. 48-1 ¶ 307.  He also adds several more specific allegations demonstrating that he is charging various defendants with engaging in a conspiracy to retaliate against him for exercising his rights under the FHA.  See id. ¶¶ 72, 74-76, 305.

Having clarified plaintiff's claims, the court turns to the relevant law:

> [U]nder New Hampshire law, the elements of a civil conspiracy are: "(1) two or more persons . . .; (2) an object to be accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."

In re Armaganian, 147 N.H. 158, 163 (2001) (emphasis in the original) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987)).  Given that plaintiff is alleging a conspiracy to violate the FHA, the court concludes that the conspiracy claim is sufficiently related to plaintiff's federal claims to justify the exercise of supplemental jurisdiction over it pursuant to 28 U.S.C. § 1367(a).  Accordingly, at this point, Lath may proceed with the conspiracy claim he asserts in Cause 14 against both Vallees, Morey, Klardie, Grandmaison, Taylor, Mullen, Sample, and Bisson.

As this case moves forward, Lath's civil conspiracy claim shall be referred to as Count 14.

### 17. Fraud, Etc.

In Cause 19 of his SAC, plaintiff asserts a claim captioned "Fraud, Deceit, Misrepresentation, Misapplication and Misappropriation of Funds."  Doc. no. 48-1, at 72.  This appears to be a restatement of Count 12 of the FAC, which is captioned "Fraud, Deceit, Misrepresentation, Misapplication of Property, Disposition Violations Pursuant to RSA 356-B."  Doc. no. 19, at 70.  That claim, in turn, is based upon allegations concerning the Association's acquisition and resale of Unit 702.  In plaintiff's view, that transaction was improper for several different reasons.  In the principal motion to dismiss the FAC, defendants argue that the court should decline to exercise supplemental jurisdiction over the claims asserted in Count 12 of the FAC because those claims "involve different elements than Plaintiff's Fair Housing Act claims and relate to different facts."  Defs.' Mem. of Law (doc. no. 26-1) 17.

The surviving federal claims in this case are based upon allegations of discriminatory conduct directed toward Lath.  The claims asserted in Cause 19 are all based upon allegations about actions taken by various defendants while managing the affairs of the Association.  Those two sets of allegations are not sufficiently related to one another to invoke the court's supplemental jurisdiction.  See 28 U.S.C. § 1367(a).

62

Accordingly, defendants are entitled to dismissal of the claim(s) asserted in Cause 19.

### 18. Disposition of Real Estate Property

In Cause 22 of his SAC, plaintiff asserts a claim captioned "Disposition of Real Estate Property."  Doc. no. 48-1, at 72. That claim appears to have been split off from Count 12 of the FAC, the caption of which includes the phrase "disposition violations pursuant to RSA 356-B."  Doc. no. 19, at 70.  For the same reasons that apply to the claim discussed in the previous section, the court lacks supplemental jurisdiction over the claim asserted in Cause 22.  Accordingly, defendants are entitled to dismissal of that claim.

### III. Conclusion

For the reasons described above, plaintiff's motion for leave to amend his complaint, document no. 48, is granted in part, and the three pending motions to dismiss, documents 26, 30, and 33, are all denied as moot.

The claims asserted in Causes 19, 20, 22, 23, and 24 of the SAC are dismissed for lack of supplemental jurisdiction, and the claims asserted in Causes 16, 17, 26, 31, 32, 33, and the § 1983 claims asserted in Cause 21 are dismissed for failure to state a claim upon which relief can be granted.

On the other hand, Lath may continue to pursue the following claims:

> Count 1: a claim under 42 U.S.C. § 3604(b) against Mills and the Association, for creating a hostile housing environment based upon Lath's sexual orientation, race or national origin.

> Count 2: a claim under 42 U.S.C. § 3604(f)(2)(A) against the Association, for handicap based housing discrimination resulting from a constructive failure to allow Lath to have an emotional support dog.

> Count 4: a claim under 42 U.S.C. § 3604(c) against the Association, for publishing a notice indicating a preference for handicapped people who need true service dogs over those who need emotional support dogs.

> Count 9: an eavesdropping claim under RSA 570-A:11 against Mullen, for installation cameras in and/or around Lath's residence.

> Count 10: a common law invasion of privacy claim against Perry Vallee, for installing a camera in Lath's unit.

> Count 11: a common law false light invasion of privacy claim against Dufresne, for statements he made about Lath in filings in the Superior Court.

> Count 12: a common law defamation claim against Dufresne, for introducing statements about Lath in an action in the Superior Court.

> Count 13: a breach of contract claim against the Association, for failing to accept mail addressed to Lath.

> Count 14: a common law civil conspiracy claim against Cheryl Vallee, Perry Vallee, Morey, Klardie, Grandmaison, Taylor, Mullen, Sample, and Bisson, for conspiring to violate the FHA by retaliating against Lath.

In addition, plaintiff may continue to pursue the following
claims, if he is able to show cause why they should not be
dismissed:

> Counts 3(a)-(i): retaliation, in violation of 42
> U.S.C. § 3617.

> Count 5: failure to comply with ANSI, in violation of
> 42 U.S.C. § 3604(f)(2).

> Count 6: conspiracy to obstruct justice, in violation
> of 41 U.S.C. § 1985(2), based upon threats made to
> witness Jason Manugian.

> Count 7: conspiracy to obstruct justice, in violation
> of 42 U.S.C. § 1985(2), based upon the destruction or
> alteration of evidence.

> Count 8: failure to prevent violations of § 1985(2),
> in violation of 42 U.S.C. § 1986.

For each claim subject to the show cause order, Lath must inform

the court whether he intends to continue pursuing that claim, or

prefers to voluntarily dismiss it.  For each claim that Lath

wishes to pursue, he must, in no more than three pages per

claim: (1) identify the specific defendant or defendants; (2)

specify the cause of action (for example, negligence); (3) state

the elements of that cause action (i.e., duty, breach of that

duty, injury, and a causal link between the breach of duty and

the injury); and (4) allege facts that satisfy each element of

the cause of action.  Lath must file his response on or before

April 19, 2017. Defendants, in turn, shall have 20 days from the date of Lath's filing to respond.

        SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 20, 2017

cc:   Gary M. Burt, Esq.
      Sanjeev Lath, pro se
      Sabin R. Maxwell, Esq.
      Daniel E. Will, Esq.
      Joshua M. Wyatt, Esq.
      Gerard Dufresne, pro se