UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Sanjeev Lath

   v.                                    Civil No. 16-cv-463-LM
                                                    Opinion No. 2017 DNH 150
Oak Brook Condominium Owners'
Association, Gerard Dufresne,
Betty Mullen, and Warren Mills


**O R D E R**

This case now consists of eight claims against four defendants,[1] including a claim against Warren Mills and the Oak Brook Condominium Owners' Association ("Association") for violating 42 U.S.C. § 3604(b) by creating a hostile housing environment for Sanjeev Lath because of his sexual orientation, race, or national origin. Before the court is a motion for summary judgment filed by Mills and the Association. Lath objects. For the reasons that follow, defendants' motion for summary judgment is granted.

**I. Summary Judgment Standard**

"Summary judgment is appropriate when the record shows that 'there is no genuine dispute as to any material fact and the

---

[1] Lath has been granted leave to file a motion to amend the operative complaint in this case to add five new claims. Currently pending before the court is a motion to amend that addresses two of those five potential claims. See doc. no. 198.

movant is entitled to judgment as a matter of law.'" [Walker v. President & Fellows of Harvard Coll.](), 840 F.3d 57, 61 (1st Cir. 2016) (quoting [Farmers Ins. Exch. v. RNK, Inc.](), 632 F.3d 777, 782 (1st Cir. 2011); citing Fed. R. Civ. P. 56(a)). When a court considers a motion for summary judgment, "[t]he evidence . . . must be viewed in the light most favorable to the nonmoving party . . . and all reasonable inferences must be taken in that party's favor." [Harris v. Scarcelli]() ([In re Oak Knoll Assocs., L.P.]()), 835 F.3d 24, 29 (1st Cir. 2016) (citing [Desmond v. Varrasso]() ([In re Varrasso]()), 37 F.3d 760, 763 (1st Cir. 1994)).

## II. Background

Lath owns a unit at Oak Brook. As of June 8, 2014, Mills also owned a unit at Oak Brook, and was the president of the Association's board of directors. Lath's hostile housing environment claim is based upon the following allegations concerning an incident that took place on June 8, 2014:

> Plaintiff is informed and believes, and on that basis alleges, that Defendant Warren Mills assaulted Lath, by forcing his way into Lath's residence, and shouting obscenities at Lath, calling him a "faggot" and "sand nigger". Such actions of Mills were motivated because of Lath's sexual orientation as a bisexual man, and Lath's national origin and race.

2

Second Am. Compl. (doc. no. 48-1) ¶ 31.  Lath claims that the conduct described above violated 42 U.S.C. § 3604(b).  Lath's § 3604(b) claim has been designated as Count 1.

### III. Discussion

Mills and the Association move for summary judgment on Count 1, arguing that Lath's hostile housing environment claim is barred by the applicable statute of limitations.  The court agrees.

Count 1 asserts a claim under the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631.  Under the FHA,

> [a]n aggrieved person may commence a civil action in an appropriate United States district court or State court <u>not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice</u> . . . to obtain appropriate relief with respect to such discriminatory housing practice.

42 U.S.C. § 3613(a)(1)(A) (emphasis added).

It is undisputed that the confrontation between Mills and Lath that is alleged in Count 1 took place on June 8, 2014.  Lath initially asserted a hostile housing environment claim in his First Amended Complaint, document no. 19, which he filed on November 13, 2016.[2]  Because Lath filed that claim more than two

---

[2] Lath's original complaint in this case, which he filed on October 18, 2016, mentions a June 2014 "altercation with Warren Mills," Compl. (doc. no. 1) ¶ 22, but does not: (1) name Mills as a defendant; (2) assert a claim based upon the June 2014 altercation; or (3) assert a claim of any sort under the FHA.

3

years after his confrontation with Mills, that claim is barred by 42 U.S.C. § 3631(a)(1)(A) as untimely.

Lath attempts to evade the operation of the FHA statute of limitations by invoking the continuing violation doctrine. As the United States Supreme Court has explained when construing an earlier version of the FHA statute of limitations:

> [A] "continuing violation" of the Fair Housing Act should be treated differently from one discrete act of discrimination. Statutes of limitations such as that contained in § 812(a) are intended to keep stale claims out of the courts. See Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314 (1945). Where the challenged violation is a continuing one, the staleness concern disappears. . . . Like the Court of Appeals, we therefore conclude that where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice.

Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81 (1982) (parallel citations and footnote omitted). And, indeed, the wording of the current FHA statute of limitations is a codification of the continuing violation principles articulated by the Court in Havens Realty. See Chao-Cheng Teng v. Shore Club Hotel Condos., No. 11-CV-281-JL, 2012 WL 1231955, at *3 (D.N.H. Apr. 12, 2012) (citing Garcia v. Brockway, 526 F.3d 456, 461-62 (9th Cir. 2008)).

The problem with Lath's invocation of the continuing violation doctrine is that his SAC alleges only "one discrete

act of discrimination," Havens, 455 U.S. at 380, i.e., the confrontation with Mills on June 8, 2014. In his objection, he identifies various instances of alleged harassment that have taken place recently, some during the course of litigating this case. See Pl.'s Mem. of Law (doc. no. 156) 14-15. But none of that conduct is alleged in Lath's complaint, and none of it covered by any of the motions to amend that Lath has been given leave to file. Necessarily, that conduct is not part of Lath's hostile housing environment claim. Therefore, the allegations in Lath's objection are insufficient to transform Count 1 into a continuing violation claim.

In addition to invoking the continuing violation doctrine, Lath also contends that the claim he assert in Count 1 was timely filed because the running of the limitations period was tolled for some unspecified amount of time. The FHA statute of limitations is subject to a tolling provision which provides:

> The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice.

42 U.S.C. § 3613(a)(1)(B). The administrative proceedings "under this subchapter" to which the FHA tolling provision refers are those authorized by 42 U.S.C. § 3610, which are initiated by filing a complaint with the Secretary of Housing and Urban Development ("HUD"). See Allen v. Housing Auth., No.

3:14-CV-706-WKW, 2015 WL 874316, at *5 (M.D. Ala. Feb. 27, 2015) ("'This subchapter,' as referenced in § 3631(a)(1)(B), is Subchapter I to Chapter 45 of the FHA and encompasses §§ 3601-19."); Smithrud v. City of St. Paul, 746 F.3d 391, 395-96 (8th Cir. 2014) ("An administrative proceeding begins when an aggrieved person files a complaint with the Secretary of the Department of Housing and Urban Development.") (citing 42 U.S.C. §§ 3602 & 3610).

In his objection, Lath states that he "filed his first complaint against Mills in June 2014 with the NH Human Rights Commission [hereinafter 'Commission' or 'HRC']." Mem. of Law (doc. no. 156) 22. In his surreply, he states that he "filed a complaint of discrimination with the [HRC] shortly after the June 8 2014 incident to which both Mills and Oak Brook Condominium Owners' Association responded." Surreply (doc. no. 169) ¶ 4. He goes on to describe two other complaints he filed with the HRC, and then asserts:

> All the complaints were timely filed with the Commission who has a work sharing agreement with EEOC.
>
> A timely filing of a charge with the appropriate administrative agency tolls the statute of limitations. Shortly after the unprejudicial dismissal of Lath's claim by the Superior Court, Lath immediately filed the suit with the Federal Court in October 2016.

Surreply ¶¶ 7-8.

6

However, Lath does not cite 42 U.S.C. § 3613(a)(1)(b), much less explain how filing a complaint with the HRC would satisfy the FHA tolling provision.[3] Moreover, it seems clear that filing a complaint with a state agency such as the HRC does <u>not</u> toll the running of the FHA statute of limitations. See Kennedy v. City of Zanesville, 505 F. Supp. 2d 456, 488 n.17 (S.D. Ohio 2007) (rejecting plaintiffs' assumption that FHA "limitations period was tolled once their administrative complaints were filed with [a state agency]," and ruling that "[b]ecause there is no evidence that Plaintiffs filed a section 3610 proceeding with HUD, tolling [was] not available"). Like the plaintiffs in <u>Kennedy</u>, Lath has produced no evidence that he ever filed a § 3610 proceeding with HUD, and as a result, the court cannot agree that the FHA limitations period was tolled by Lath's filing a complaint with the HRC.

That said, the FHA includes a mechanism for the involvement of state agencies in the investigation of housing complaints that does result in tolling the statutory limitations period. Specifically, after stating that "[a]n aggrieved person may . . . . file a complaint with the Secretary [of HUD] alleging such

---

[3] Lath states that "the Commission . . . has a work sharing agreement with EEOC [<u>i.e.</u>, the Equal Employment Opportunity Commission]," Pl.'s Surreply (doc. no. 169) ¶ 7, but Lath is not claiming employment discrimination; he is claiming housing discrimination. Thus, a work sharing agreement between the HRC and the EEOC has no bearing on this case.

7

discriminatory housing practice," 42 U.S.C. § 3610(a)(1)(A)(i), the FHA enforcement provision goes on to provide:

> **(1)** Whenever a complaint alleges a discriminatory housing practice—
>
> > **(A)** within the jurisdiction of a State or local public agency; and
> >
> > **(B)** as to which such agency has been certified by the Secretary under this subsection;
>
> the Secretary shall refer such complaint to that certified agency before taking any action with respect to such complaint.

42 U.S.C. § 3610(f). A case from the Southern District of Ohio illustrates the referral process:

> On June 23, 2010, Plaintiff filed a State of Ohio Housing Discrimination Charge against RLJ and Greenwood Homes. This complaint was sent to the United States Department of Housing and Urban Development ("HUD"), which referred the matter to the Ohio Civil Rights Commission ("OCRC").

Dickinson v. Zanesville Metro. Hous. Auth., 975 F. Supp. 2d 863, 869 (S.D. Ohio 2013) (citations to the record omitted). Under the circumstances described in Dickinson, it was undisputed "that the pendency of the OCRC proceedings tolled the limitations period provided by § 3613." Id. at 876.

The problem for Lath is that he has produced no evidence that that the statutory referral process, as described in Dickinson, ever took place in this case. He did not attach any such evidence to his objection to defendants' summary judgment motion or to his surreply. Moreover, the court has diligently

8

examined the attachments to many of Lath's other pleadings (with the notable exception of the 344 unlabeled exhibits attached to document no. 48), and has found no evidence that the HRC was handling Lath's complaint on a referral from the Secretary of HUD. Without such a showing, the pendency of the HRC's proceedings did not toll the running of the FHA statute of limitations.

Finally, Lath invokes the doctrine of equitable tolling, as described in Burnett v. New York Central Railroad Co., 380 U.S. 424 (1965). In that case, the Supreme Court explained that

> [t]he basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one of 'legislative intent whether the right shall be enforceable * * * after the prescribed time.' Mid-state Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 360 [(1943)] . . . . [and that] the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances.

Burnett, 380 U.S. at 426-27.

Burnett does not counsel in favor of giving Lath the benefit of equitable tolling. As Burnett explains, the basic inquiry is into congressional intent, and whether that intent would be promoted by the application of equitable tolling. Here, Congress's intent is fairly clear. It expressly provided for tolling while a potential FHA plaintiff pursues an administrative remedy through the Secretary of HUD. On the other hand, it did not extend tolling to potential plaintiffs

who choose to pursue administrative remedies in other forums, such as the HRC.  Plainly, Congress could have drafted a broader tolling provision, but it did not.  Moreover, the decision to limit tolling to claims pursued through the Secretary of HUD makes sense as a way of encouraging the uniform adjudication of FHA claims, especially in light of the statutory requirement that before the Secretary of HUD may refer a complaint to a state or local public agency, that agency must be certified by the Secretary, see 42 U.S.C. § 3619(f)(1)(B).

Even if the court moves beyond Burnett to a more contemporary iteration of the doctrine of equitable tolling, that does not help Lath.  "To prevail on a theory of equitable tolling, an individual must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Omar v. Lynch, 814 F.3d 565, 568-69 (1st Cir. 2016) (quoting Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010)).  As for the second showing, "equitable tolling [generally] attaches only when 'a claimant misses a filing deadline because of circumstances effectively beyond [his] control.'"  Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 390 (1st Cir. 2014) (quoting Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 279 (1st Cir. 1999)).

Here, Lath does not mention the legal standard set out in Omar, and, like the plaintiff in Rivera-Díaz, who was denied the benefit of equitable tolling, Lath "identifies no circumstances beyond his control that might have prevented him from filing suit in a timeous manner," 748 F.3d at 390-91; see also Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 291 (S.D.N.Y. 2011) (denying FHA plaintiffs equitable tolling where they had "not alleged that the Moving Defendants concealed [their] FHA claim from them during the applicable statute of limitations" and in that way created circumstances beyond their control that caused them to miss filing deadline); Novak v. Levenfeld Pearlstein, No. 13 C 08861, 2014 WL 4555581, at *7 (N.D. Ill. Sept. 15, 2014) (denying FHA plaintiffs equitable tolling where "there [was] no basis in the allegations to find that [they] were fraudulently dissuaded from going to federal court, or that their disability kept them from doing so"). To be sure, Lath erred in believing that filing a housing claim with the HRC tolled the running of the statute of limitations on a claim brought pursuant to § 3613(a), but "equitable tolling does 'not extend to what is at best a garden variety claim of excusable neglect.'" Rivera-Díaz, 748 F.3d at 391 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)); see also Terry v. Inocencio, No. 3:11-CV-660-K-BK, 2013 WL 6120539, at *3 (N.D.

11

Texas Nov. 21, 2013) (explaining, in FHA case, "that ordinarily, ignorance of the law does not justify equitable tolling").

To sum up, Lath filed his hostile housing environment claim outside the statutory limitation period. He has not made allegations sufficient to state a continuing violation claim. He qualifies for neither statutory nor equitable tolling. Accordingly, defendants are entitled to judgment as a matter of law on the hostile housing environment claim stated in Count 1.

## IV. Conclusion

Because Mills and the Association are entitled to judgment as a matter of law on Count 1, their motion for summary judgment, document no. 155, is granted. Both Count 1 and Warren Mills are dismissed from this case. Moreover, as a result of this order, and the order on Perry Vallee's motion for summary judgment, document no. 202, this case now consists of seven claims (Counts 2, 4, 9, 11(a), 12(a), 13, and 15) against three defendants: the Association (Counts 2, 4, and 13), Gerard Dufresne (Counts 11(a), 12(a), and 15), and Betty Mullen (Count 9).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 8, 2017

cc: Gary M. Burt, Esq.
    Sanjeev Lath, pro se
    Walter Maroney, Esq.
    Sabin R. Maxwell, Esq.
    Brendan D. O'Brien, Esq.
    Gregory V. Sullivan, Esq.
    Daniel E. Will, Esq.
    Joshua M. Wyatt, Esq.
    Gerard Dufresne, pro se